UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

X--------------------------------------------------------
TOWN OF HEMPSTEAD,  　　　　　　　　　Civil Action No. 2:16-cv-03652-ENV-ST

　　　　Plaintiff,

-against-

UNITED STATES OF AMERICA, *et al.*,

　　　　Defendants.
X--------------------------------------------------------

MEMORANDUM OF LAW IN SUPPORT OF NORTHROP GRUMMAN CORPORATION'S AND NORTHROP GRUMMAN SYSTEMS CORPORATION'S DAUBERT MOTION TO
<u>EXCLUDE EXPERT TESTIMONY OF WILLIAM MERKLIN</u>

| | |
|---|---|
| Mark A. Chertok | Stephen A. Klein (*pro hac vice*) |
| Elizabeth Knauer | Mark A. Miller (*pro hac vice*) |
| SIVE, PAGET & RIESEL, P.C. | HOLLINGSWORTH LLP |
| 460 Park Avenue | 1350 I Street, N.W. |
| New York, NY 10022 | Washington, DC 20005 |
| Telephone: (212) 421-2150 | Telephone: (202) 898-5800 |
| Facsimile: (212) 421-1891 | Facsimile: (202) 682-1639 |
| Email: mchertok@sprlaw.com | Email: sklein@hollingsworthllp.com |
| 　　eknauer@sprlaw.com | 　　mmiller@hollingsworthllp.com |

*Attorneys for Defendants*
*Northrop Grumman Corporation and Northrop Grumman Systems Corporation*

TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................................2

II.   FACTUAL BACKGROUND..............................................................................................4

III.   THE COURT SHOULD EXCLUDE MR. MERKLIN'S OPINIONS UNDER FEDERAL RULE OF EVIDENCE 702 AND *DAUBERT*....................................................6

     A.   To the Extent Mr. Merklin Purports to Opine that the Site Is the Source of Freon-113 in the Town's Wells, the Court Should Exclude that Opinion................7

     B.   Mr. Merklin Offers No Opinion that the Town's Response Costs Were Consistent with the NCP........................................................................................10

     C.   Mr. Merklin's "Typical and Reasonable" Are Unreliable and Irrelevant to Whether the Town's Costs Were "Necessary" Under CERCLA. ........................11

     D.   Mr. Merklin's Opinion that the Treatment System for LWD Wells 7A/8A Was Aesthetically Pleasing Is Irrelevant. ..............................................................14

IV.   CONCLUSION..................................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

Cases

*Baker v. Anschutz Exploration Corp.*,
 68 F. Supp. 3d 368 (W.D.N.Y. 2014) ............................................................................. 7, 9, 10

*Berk v. St. Vincent's Hosp. & Med. Ctr.*,
 380 F. Supp. 2d 334 (S.D.N.Y. Aug. 11, 2005) ........................................................................ 13

*Cooper v. Meritor, Inc.*,
 No. 4:16-52, 2019 WL 545187 (N.D. Miss. Feb 11, 2019) ........................................................ 9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
 509 U.S. 579 (1993) .............................................................................................................. *passim*

*Donnelly v. Ford Motor Co.*,
 80 F. Supp. 2d 45 (E.D.N.Y. 1999) ............................................................................. 11, 14, 15

*Dora Homes, Inc. v. Epperson*,
 344 F. Supp. 2d at 888 ...................................................................................................... 13, 15

*DVL Inc. v. Gen. Elec. Co.*,
 811 F. Supp. 2d 579 (N.D.N.Y. 2010) ............................................................................... 2, 8, 9

*Freeman v. Glaxo Wellcome, Inc.*,
 189 F.3d 160 (2d Cir. 1999) ....................................................................................................... 3

*Innis Arden Golf Club v. Pitney Bowes, Inc.*,
 629 F. Supp. 2d 175 (D. Conn. 2009) .................................................................................. 9, 10

*Lara v. Delta Int'l Mach. Corp.*,
 174 F. Supp. 3d 719 (E.D.N.Y. 2016) ........................................................................................ 6

*In Re M/V MSC Flamina*,
 No 12-CV-8892, 2017 WL 3208598 (S.D.N.Y. Jul. 28, 2007) ................................................... 7

*Milbut v. Hi-Score Plant Food Co.*,
 No. CIV. A. 91-2008, 1992 WL 396774 (E.D. Pa. Dec. 24, 1992) ......................................... 15

*MPM Silicones, LLC v. Union Carbide Corp.*,
 No. 111CV1542BKSATB, 2016 WL 11604974 (N.D.N.Y. July 7, 2016) .............................. 10

*Pozefsky v. Baxter Healthcare Corp.*,
 No. 92CV0314LEKRWS, 2001 WL 967608 (N.D.N.Y. Aug. 16, 2001) ............................ 7, 15

*Town of Oyster Bay v. Northrop Grumman Sys. Corp.*,
   No. 05-CV-1945 (TCP), 2009 WL 10691086 (E.D.N.Y. May 14, 2009) ...............................13

*United States v. Georgia-Pac., LLC*,
   No. CIV.A. 1-09-CV-429, 2009 WL 3413594 (W.D. Mich. Sept. 30, 2009) .........................15

*Washington v. Kellwood Co.*,
   105 F. Supp. 3d 293 (S.D.N.Y. 2015) ......................................................................................6

*Weisgram v. Marley Co.*,
   528 U.S. 440 (2000) ..............................................................................................................6, 7

*Young v. United States*,
   394 F.3d 858 (10th Cir. 2005) ................................................................................................13

Statutes

42 U.S.C. § 9607(a) ........................................................................................................................2

42 U.S.C. § 9607(a)(4)(B) .........................................................................................................3, 10

Comprehensive Environmental Response, Compensation, and Liability Act of
   1980 § 107(a), 42 U.S.C. § 9607 ................................................................................2, 10, 14

Other Authorities

Federal Rules of Evidence 702 ...........................................................................................1, 6, 10

Plaintiff Town of Hempstead (the "Town") seeks to recover from Defendants the costs of wellhead treatment it installed on three of its Levittown Water District ("LWD") drinking water wells. To prevail on its claims, the Town bears the burden of proving that Defendants' properties were the source of the low levels of Freon-113 and other substances found in its wells. Moreover, the Town can only recover under its CERCLA claims if the costs associated with its treatment facilities were necessary and consistent with the Environmental Protection Agency's NCP.

The Town has offered William Merklin as a purported expert to opine on the issue of the Town's "typical" and "reasonable" design and implementation of its treatment facilities, as well his assumption that source of substances in the LWD Wells was the Northrop Grumman/Navy Site. As set forth below, Mr. Merklin does not state an expert opinion that the Northrop Grumman/Navy Site is the source of substances in the LWD Wells, and he does not purport to state CERCLA necessity or NCP consistency opinions. Nevertheless, to the extent the Town argues that Mr. Merklin's opinions support those elements of the Town's claim, they are inadmissible pursuant to Federal Rules of Evidence 702,[1] and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Without admissible expert testimony to carry its burden of proving that Northrop Grumman Corporation and Northrop Grumman Systems Corporation (collectively, "Northrop Grumman") is the source of the substances in the LWD Wells, or that the Town's costs were necessary and consistent with the NCP, the Town cannot

---

[1] Federal Rule of Evidence 702 requires that a witness is "qualified as an expert by knowledge, skill, experience, training, or education," that the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence the evidence or determine a fact in issue," the expert's "testimony is based on sufficient facts or data," and that the "testimony is the product of reliable principles and methods," which have been applied "reliably to the facts of the case." Fed. R. Evid. 702.

defeat Northrop Grumman's summary judgment motion, which is filed concurrently with this Motion.

I.     INTRODUCTION

The Town asserts claims to recover from Northrop Grumman the costs of the treatment systems on LWD Wells 7A, 8A, and 13 under § 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9607, and common law.[2]  The critical elements that the Town must prove for its § 107(a) claim are:  (1) a release of hazardous substances at the Navy/Northrop Grumman Site caused the Town to incur its claimed costs (*i.e.*, the Site is the source of Freon-113 in LWD Wells 7A, 8A, and 13).  42 U.S.C. § 9607(a)); and, if so, (2) the Town's costs were necessary and consistent with the Environmental Protection Agency's National Contingency Plan ("NCP"), a detailed set of federal regulations that the Town must follow to recover its costs under CERCLA.[3]

The Town must offer admissible expert testimony to prove the Navy/Northrop Grumman Site is the source of substances at the LWD Wells.  *See, e.g., DVL Inc. v. Gen. Elec. Co.*, 811 F. Supp. 2d 579, 599 (N.D.N.Y. 2010) (granting summary judgment on a § 107(a) claim where the plaintiff failed to show that releases "on [the defendant's] land made their way down to the [the plaintiff's] Site," because "without expert opinion linking [the defendant] to the contamination at

---

[2] Compl. ¶¶ 60–91.  For the sake of brevity, Northrop Grumman will not repeat the detailed factual background set forth in the Memorandum in Support of its Motion for Summary Judgment, and the Statement of Material Facts in Support of the Motion for Summary Judgment.  This Motion instead will address why Mr. Merklin's opinions do not help carry the Town's burden of proof on summary judgment.  Additionally, the documents cited in this Memorandum are attached as exhibits to the Declaration of Mark A. Miller in Support of Northrop Grumman Corporation's and Northrop Grumman Systems Corporation's *Daubert* and Summary Judgment Motions ("Miller Decl.").

[3] 42 U.S.C. § 9607(a); *see also* Mem. in Supp. of Northrop Grumman's Mot. for Summ. J. ("Northrop Grumman's S.J. Mem.") at 15-16 (citing cases).

the [plaintiff's] Site, the circumstantial evidence [the plaintiff] cites does not provide the Court with a basis for denying [the defendant's m]otion for summary judgment"), *aff'd*, 490 F. App'x 378 (2d Cir. 2012). The Town also must prove that its costs were "necessary" and incurred "consistent with" the NCP. 42 U.S.C. § 9607(a)(4)(B); *see also*, *e.g.*, *Freeman v. Glaxo Wellcome, Inc.*, 189 F.3d 160, 163 (2d Cir. 1999) ("To establish a prima facie case of liability, a plaintiff must show . . . response costs that were necessary and consistent with the National Contingency Plan set up by CERCLA.").

The Town has proffered William Merklin, the engineer who designed and supervised the construction of the packed tower aeration treatment systems ("PTAS") at LWD Wells 7A, 8A, and 13, as an expert witness.[4] Mr. Merklin explicitly stated that he is not opining on the source of the Freon-113 detected in LWD Wells 7A, 8A, and 13, although he relies on his assumption that the Site is the source in his report.[5] Mr. Merklin also admitted that he is "not familiar with" the NCP, and did not take any steps to comply with the NCP when designing and building the treatment systems on LWD Wells 7A, 8A, and 13.[6] He is therefore not providing an expert opinion on whether the Towns costs of the treatment systems he designed were consistent with the NCP.

The Town instead proffers Mr. Merklin, who opines that (1) the costs of his own work in designing and building the treatment systems at issue "are considered to be both typical and reasonable,"[7] and (2) the facilities housing the Wells 7A/8A treatment systems mitigate the

---

[4] Merklin Aug. 9, 2016 Expert Report at 4 ("D&B Report") (Miller Decl., Ex. 19).

[5] Merklin Dep. at 129:13–23 (Miller Decl., Ex. 14); D&B Report at 4, 5–6.

[6] Merklin Dep. at 109:16–21.

[7] D&B Report at 6.

3

negative visual impacts of the systems in the surrounding neighborhoods.[8] These opinions are outside Mr. Merklin's area of expertise, unreliable, and/or irrelevant to the issues this Court must decide on summary judgment, and they are thus inadmissible.

To the extent that the Town intends to offer Mr. Merklin's "typical and reasonable" testimony in support of carrying burden of proof on the CERCLA claim that its costs be consistent with the NCP, those opinions lack a reliable basis. The evidence demonstrates that the treatment systems were overdesigned (*i.e.*, not "necessary"), because they are based on overly conservative criteria TOH has not shown will ever impact LWD Wells 7A, 8A, or 13. Mr. Merklin's opinion on "aesthetics" is similarly irrelevant, because costs to improve aesthetics are unrecoverable under CERCLA. The Court should exclude Mr. Merklin's opinions under *Daubert*.

II.     FACTUAL BACKGROUND

Mr. Merklin, is the senior vice president of the water supply division at D&B Engineers and Architects.[9] The Town retained Dvirka & Bartilucci Engineers & Architects, P.C. ("D&B"), an engineering consultancy firm, and Mr. Merklin in 2013[10], and he served as the Project Manager responsible for design and construction of the treatment systems on LWD Wells 7A, 8A, and 13.[11] Mr. Merklin's stated area of expertise is in "water supply,"[12] but he admits that he

---

[8] *Id*. at 6.

[9] Merklin Dep. at 36:21–37:2.

[10] D&B Report at 4.

[11] D&B Report at 4.

[12] Merklin Dep. at 37:3–5.

4

is not a groundwater modeler, chemist, or hydrologist.[13] Mr. Merklin has no formal education in environmental engineering.[14]

Mr. Merklin prepared D&B's Design Reports for Wells 7A/8A (August 2014, Revised Feb. 2016) and Well 13 (August 2014, Revised Feb. 2016).[15] He designed each system to treat 420 μg/l of TCE, although there was essentially no TCE present in the LWD Wells.[16] Mr. Merklin admitted that he conducted no additional research relating to source in preparing his expert report, relying upon his design reports and associated documents.[17]

Mr. Merklin admitted that his only prior experience as an expert witness was a slip and fall case for the Village of Mineola, relating to the grades in a parking lot to determine whether water from melting snow would have ran across a person's path.[18] Mr. Merklin did not prepare an expert report in that case, nor has he been deposed in that case as of the date of his deposition.[19]

During the preparation of Mr. Merklin's design reports, he came to the conclusion that, "to a reasonable degree of certainty," the best technology for the LWD Wells was the PTAS.[20] When asked what "reasonable degree of certainty" meant to him, Mr. Merklin responded that "those are words in the English language" and he was unable to explain what they meant.[21]

---

[13] Merklin Dep. at 38:11–23.

[14] D&B Report Ex. A.

[15] D&B Design Reports (Miller Decl., Exs. 21–24); D&B Report at 4.

[16] D&B Report at 4.

[17] Merklin Dep. at 25:23–28:21, 131:17–132:20.

[18] Merklin Dep. at 81:18–82:15.

[19] Merklin Dep. at 82:10–15.

[20] D&B Report at 4; Merklin Dep. at 144:3–18.

[21] Merklin Dep. at 144:19–25.

### III. THE COURT SHOULD EXCLUDE MR. MERKLIN'S OPINIONS UNDER FEDERAL RULE OF EVIDENCE 702 AND *DAUBERT*.

In *Daubert*, the Supreme Court addressed the admissibility of expert testimony and established "the exacting standards of reliability such evidence must meet." *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000). The Town, as the proffering party, has the burden to demonstrate Mr. Merklin experts satisfies these exacting standards. *Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 303 (S.D.N.Y. 2015). Because expert witnesses have the potential to "be both powerful and quite misleading," *Daubert*, 509 U.S. at 595 (quotations omitted), Rule 702 requires trial courts to act as gatekeepers to ensure that all expert testimony is "not only relevant, but reliable." *Daubert*, 509 U.S. at 589, 595.

The Town must first establish that Mr. Merklin has the necessary expertise through "knowledge, skill, experience, training, or education" to render an opinion on the issues addressed by his testimony. Fed. R. Evid. 702; *see also Lara v. Delta Int'l Mach. Corp.*, 174 F. Supp. 3d 719, 729–30 (E.D.N.Y. 2016) ("The Court's first step in considering whether expert testimony will be admitted into evidence requires it to determine whether the proffered expert is qualified by virtue of some specialized knowledge, skill, experience, training or education").

The Town must then establish that Mr. Merklin's testimony is "reliable" – *i.e.*, "ground[ed] in the methods and procedures of science," as opposed to the expert's "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 589–90 (quotations omitted). The Town also must establish that Mr. Merklin's testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702, which means that the testimony must "fit" the "pertinent inquir[ies]" in this lawsuit, *Daubert*, 509 U.S. at 591–92. When evaluating "fit," courts "look to ensure that the proposed expert testimony is relevant to the task at hand, . . . i.e., that it logically advances a material aspect of the proposing party's case."

6

*Pozefsky v. Baxter Healthcare Corp.*, No. 92CV0314LEKRWS, 2001 WL 967608, at *2 (N.D.N.Y. Aug. 16, 2001) (quotations omitted). "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Baker v. Anschutz Exploration Corp.*, 68 F. Supp. 3d 368, 375 (W.D.N.Y. 2014) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). Mr. Merklin's testimony fails these "exacting standards" of admissibility. *Weisgram*, 528 U.S. at 455.

    A.    <u>To the Extent Mr. Merklin Purports to Opine that the Site Is the Source of Freon-113 in the Town's Wells, the Court Should Exclude that Opinion.</u>

Mr. Merklin admitted at deposition that he is not opining on the specific source of Freon-113 in the LWD Wells,[22] and such an opinion is not listed as a conclusion in his Expert Report.[23] Mr. Merklin's Expert Report, however, recounts how, in his Design reports for the LWD Well 7A/8A, and 13 treatment systems, he conducted a "2-mile radius search in an effort to identify the possible source of VOC contamination."[24] To the extent the Town will use Mr. Merklin's design reports or statements about those reports as a basis to argue that the Navy/ Grumman Site is the source of Freon-113 in the LWD Wells, Mr. Merklin's is unqualified to offer such an opinion, and his "2-mile radius search" conclusion is unreliable. Mr. Merklin's expertise in constructing water supply projects is unrelated to issues relevant to the source of substances present in wells, and in this case, tracking the source, transport, and fate of the Freon-113 from its point of origin to the LWD Wells. He therefore lacks the necessary expertise to opine on the source of the substances in the LWD Wells. *See In Re M/V MSC Flamina*, No 12-CV-8892,

---

[22] Merklin Dep. at 129:13–23.

[23] D&B Report at 5–6.

[24] D&B Report at 4.

7

2017 WL 3208598, at *11 (S.D.N.Y. Jul. 28, 2007) (an individual in one field may not offer opinions in another: the expertise and area of proffered opinions should be closely related).

Even if Mr. Merklin were qualified to offer an expert opinion on the source of the Freon-113 in the LWD Wells, he just assumed the source was the Site, because it was "2.5 miles north-northeast from Wells 7A, 8A, and 13" and because there were detections of Freon-113 in the OU2 plume."[25] Mr. Merklin admitted that he did not identify any data to the west of the LWD Wells (that might have actually been hydraulically upgradient of the LWD Wells unlike the Site[26]). Neither did he conduct his own modeling, or research any other potential sources.[27] Mr. Merklin's entire opinion on source, then, is based on the mere presence of Freon-113 in both the LWD Wells and at some locations in the OU2 plume.[28]

In *DVL, Inc. v. General Electric Company*, 811 F. Supp. 2d 579, 597 (N.D.N.Y. 2010), the court dealt with plaintiffs who were unable to point to any evidence linking defendants activities to the plaintiffs site; instead relying on circumstantial evidence resting largely on the fact that defendants owned property adjacent to plaintiffs site. The court in *DVL Inc.* found that this circumstantial evidence based on spatial proximity was insufficient to establish defendants as PRPs because relying on solely on such circumstantial evidence was insufficient to prove any nexus between defendants waste and the contamination at plaintiff's site. *Id*. at 597–98.

---

[25] D&B Expert Report at 4.

[26] LWD Wells 7A, 8A, and 13 are to the south-southwest of the Site. Merklin Dep. at 184:20-185:4. The OU2 plume flows to the south-southeast from the Site. Nathan Epler Expert Report at 11 (Miller Decl., Ex. 4). Mr. Merklin was unable to identify any studies that he relied upon to prove that LWD Wells 7A, 8A, and 13, which are not hydraulically down-gradient of the Site, could be impacted by the OU2 plume. Merklin Dep. at 130:6–19.

[27] Merklin Dep. at 62:23–65:21.

[28] Merklin Dep. at 128:11-129:23, 147:10-149:18.

8

Similarly, Mr. Merklin's attempt to rely on this same associational fallacy, unsupported by any further analysis or actual data, is an unreliable basis for an expert opinion.[29]

There are in fact other possible sources of Freon-113 that are hydraulically upgradient of LWD Wells 7A, 8A, and 13 and unrelated to the Site.[30] Mr. Merklin testified that he was not aware of these other sources, and did nothing to exclude them as a possible source, further demonstrating the unreliability of his opinion.[31] Courts have held that under *Daubert*, for an expert to demonstrate causation, the expert must rule out alternative causes. *Cooper v. Meritor, Inc.*, No. 4:16-52, 2019 WL 545187, at *22 (N.D. Miss. Feb 11, 2019) (excluding plaintiff's expert on source, because the expert "did not attempt to rule out disposal of TCE-contaminated waste by other companies or individuals" and failed to "explain why certain obvious alternative explanations do not undermine his conclusions"). Like Merklin, the *Copper* court held that an experts failure to address obvious potential alternative causes renders the expert opinions unreliable. *Id*. at 20, 22. Similarly, in *Innis Arden Golf Club v. Pitney Bowes, Inc.*, 629 F. Supp. 2d 175, 181 (D. Conn. 2009), the court found that an expert who admittedly testified that "that his responsibilities as an expert did not extend to looking for other potential sources of the [hazardous substances] found on [the plaintiff's] property" proved that his conclusions were not "the product of an open-minded search for the truth about the Innis Arden contamination," rendering it unreliable. Such analysis, as that performed by Merklin, which is both confined to

---

[29] *See, e.g.*, *Baker v. Anschutz Expl. Corp.*, 68 F. Supp. 3d 368, 377–78 (W.D.N.Y. 2014) (excluding plaintiff's expert who claimed that the presence of a hazardous substance at plaintiff's site proved his theory that the defendant's site was the source, without performing an independent analysis that would have supported his theory); *DVL, Inc.*, 811 F. Supp. 2d at 597–98.

[30] Nathan Epler Expert Report at 13–14, 19.

[31] Merklin Dep. at 127:22–128:10, 132:7–133:19, 153:6–22.

9

an incomplete set of data, and artificially narrow, are not scientifically valid; meaning they cannot be the product of the reliable principles and methods and should be excluded. *Id* at 190.[32]

      B.    <u>Mr. Merklin Offers No Opinion that the Town's Response Costs Were Consistent with the NCP.</u>

As explained in Northrop Grumman's Motion for Summary Judgment, the Town may recover costs under CERCLA § 107(a) only if those costs are "necessary" and "consistent with" the NCP. 42 U.S.C. § 9607(a)(4)(B).[33] The Court should preclude Mr. Merklin from testifying as to NCP constancy because he readily admitted that he is "not familiar with" the NCP.[34] When asked whether he made "any effort to comply" with the NCP in performing his work, Mr. Merklin testified, "No."[35] Nothing in Mr. Merklin's testimony, Expert Report, Design Reports, or professional background suggests that he has any knowledge of the NCP.[36]

To the extent the Town will attempt to use Mr. Merklin's opinions to argue that its treatment systems were designed and built consistent with the NCP, the Court should reject the attempt.[37] *Cf. MPM Silicones, LLC v. Union Carbide Corp.*, No. 111CV1542BKSATB, 2016

---

[32] The lack of any analysis, aside from Mr. Merklin's 2-mile search conducted during the design stage of his work as Project Manager for the Town, demonstrates the unreliability of Mr. Merklin's "source" opinion. *See Baker v. Anschutz Exploration Corp.*, 68 F. Supp. 3d 368, 378-79 (W.D.N.Y. 2014) (holding that, in water contamination cases, expert testimony based on insufficient data, which did not rely on reliable principles and methods, and did not reliably apply the principles and methods to the facts of the case should be excluded).

[33] For a further discussion of the requirements of the NCP, see Northrop Grumman's Motion for Summary Judgment filed concurrently with this motion.

[34] Merklin Dep. at 109:16–21.

[35] *Id.* at 109:22–110:2.

[36] *See* D&B Report, Att.; Merklin Dep. at 109:16–21.

[37] Discovery in this case has shown that neither the Town nor Mr. Merklin performed the vast majority of NCP requirements, rendering his opinions irrelevant in determining whether the Town's costs were incurred consistent with the NCP. Merklin Dep. at 91:11–17, 95:10–14, 192:5–8; Fed. R. Evid. 702; *Daubert*, 509 U.S. at 579.

WL 11604974, at *4 (N.D.N.Y. July 7, 2016) (expert qualified to offer opinion on the NCP, because he had over 30 years of conducting NCP-compliant remedial and removal actions).

      C.      <u>Mr. Merklin's "Typical and Reasonable" Are Unreliable and Irrelevant to Whether the Town's Costs Were "Necessary" Under CERCLA.</u>

Mr. Merklin opines that his own work in designing and constructing the treatment systems on the LWD Wells is "typical and reasonable,"[38] "[b]ased on [his] experience with the cost for similar treatment facilities constructed in Nassau County." D&B Report at 5. In other words, Mr. Merklin says that the Court should accept the opinion that his work was typical and reasonable, because he said it is. This Court excludes experts, like Mr. Merklin, who do not "identify any specific technique or method that [they] used, and cites no industry standards, surveys or studies upon which [they] relied." *Donnelly v. Ford Motor Co.*, 80 F. Supp. 2d 45, 49–50 (E.D.N.Y. 1999). Such experts should be excluded, because reliability requires "a detailed explication of the reasoning that has led to [the expert's] conclusion." *Id.* at 50. "Without some explanation of the data, studies, or reasoning [the expert] employed, his conclusion is simply inadmissible *ipse dixit.*" *Id.* (citing *Joiner*, 118 S. Ct. at 519). Such *ipse dixit* is an unreliable basis for an expert opinion,[39] and even Mr. Merklin admitted that he has never prepared an expert report opining on a project where he was the project manager.[40]

---

[38] D&B Report at 5.

[39] *Donnelly*, 80 F. Supp. 2d at 48 ("Though the focus in considering these factors must be on principles and methodology and not on conclusions, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." (citing *Joiner*, 118 S. Ct. at 519)).

[40] Merklin Dep at 83:25–84:4.

11

To the extent the Town relies on Mr. Merklin's "typical and reasonable" opinion to support the claims that its costs were "necessary" under CERCLA, Mr. Merklin fails to provide a reliable justification for his use of a 420 ug/l of TCE design criteria.

Mr. Merklin chose the 420 ug/l of TCE design criteria based on his assumption that the OU2 plume originating from the Navy/Grumman Site is impacting the LWD Wells[41] but, as shown above, he lacked a reliable basis for reaching any "source" conclusion.  Mr. Merklin's 420 ug/l design criteria was supposedly based on the highest detection of TCE in the OU2 plume, but he could not identify the sample his design criteria was based on,[42] did not analyze whether the LWD Wells would ever actually be impacted by 420 ug/l of TCE,[43] and made no determination of whether a design criteria less than 420 ug/l of TCE would have been effective.[44] Using a lower design criteria, with the ability to expand the system, would have been more cost effective while being equally effective at treating the levels of substances actually found in the LWD Wells.[45]  Mr. Merklin admitted it would have made sense to identify the basis of his design criteria, and while the D&B design reports stated generally that the criteria were determined by the "maximum measured concentrations" of the contaminants upstream of the LWD Wells in the OU2 plume, Mr. Merklin did not identify any specific upgradient wells providing such a basis, nor could he identify any OU2 sampling data which supported his design criteria.[46]

---

[41] D&B Report at 4.

[42] Merklin Dep. at 67:25–68:4, 135:4–37:23, 140:8–143:20.

[43] Merklin Dep. at 140:8–143:20.

[44] Merklin Dep. at 146:8–22, 192:5–8, 238:12–239:14.

[45] Brian Morrissey Expert Report at 8–9 (Miller Decl., Ex. 31).

[46] D&B Design Reports; Merklin Dep. at 67:25–68:16, 135:8–138:18, 180:20–181:1.

Mr. Merklin admitted that his opinion is the product of his own cursory experience, rather than scientific testing, analysis, or some other objective criteria.[47] When an expert like Mr. Merklin who "present[s] no generally accepted scientific methodology," no germane literature, and no other evidence that would withstand scrutiny aside from their professional experience in support of their categorical statements, the testimony is not admissible. *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334 (S.D.N.Y. Aug. 11, 2005); *see also Dora Homes, Inc. v. Epperson*, 344 F. Supp. 2d at 888 (excluding expert testimony as unreliable in an environmental contamination claim in part because "it is clear . . . that his 'theories' were the product of his own experience rather than scientific testing or peer review" and he "did not state a known or potential error rate for his 'theories'").

Mr. Merklin also said he used a 420 µg/l TCE design criteria, because "[b]ased on good engineering practice, a water treatment facility must be designed to treat the highest possible future contamination concentration anticipated,"[48] and the 420 ug/l design criteria is a "worst-case scenario."[49] CERCLA, however, requires that a response action be "closely tied to the *actual cleanup*" of hazardous substance as opposed to some hypothetical, overly conservative design criteria. *Young v. United States*, 394 F.3d 858, 864 (10th Cir. 2005) (emphasis in original); *see also Town of Oyster Bay v. Northrop Grumman Sys. Corp.*, No. 05-CV-1945 (TCP), 2009 WL 10691086, at *24 (E.D.N.Y. May 14, 2009) (plaintiffs could not demonstrate that its costs were necessary under CERCLA, "given that it spent millions of dollars to address risks which did not even exist"). Mr. Merklin could not articulate the methodology he used in

---

[47] Merklin Dep. at 166:9–167:16; Nathan Epler Expert Report at 7.
[48] Merklin Dep. at 137:14–23; D&B Report at 4.
[49] Merklin Dep. at 148:6–22.

13

selecting this criteria, and could not cite any literature to support either his design criteria or the "good engineering practice" he relied upon.[50] Mr. Merklin's failure to "identify any specific technique or method" renders his expert opinion relating to the typical and reasonable nature of the PTAS unreliable and inadmissible. *Donnelly*, 80 F. Supp. 2d at 49–50. "Without some explanation of the data, studies, or reasoning [the expert] employed, his conclusion is simply inadmissible *ipse dixit*." *Id.* (citing *Joiner*, 118 S. Ct. at 519).

   D. <u>Mr. Merklin's Opinion that the Treatment System for LWD Wells 7A/8A Was Aesthetically Pleasing Is Irrelevant.</u>

Mr. Merklin offers an opinion that the treatment system he designed for LWD Wells 7A/8A is aesthetically pleasing, "achiev[ing] the [Town's] goal for mitigating the negative visual impact of the facility within the residential neighborhood."[51] Mr. Merklin, however, is not an expert in aesthetics.[52] In addition to aesthetic flourishes, Mr. Merklin designed brick and masonry buildings for the treatment system on LWD Wells 7A/8A, which include HVAC, lighting, asphalt, fencing, and roofing.[53] As described in Northrop Grumman's Motion for Summary Judgment, the Town could not justify these other aspects of the PTAS as "necessary" under § 107(a).[54] In addition to being unable to justify the Town's 420 µg/l of TCE design criteria, Mr. Merklin could not explain why the town installed two shorter towers for Wells 7A and 8A as opposed to one taller tower, admitting that one tower would have been just as effective, while being less expensive.[55] In addition to utilizing two towers for Wells 7A and 8A,

---

[50] Merklin Dep. at 67:25–68:4.

[51] D&B Expert Report at 6.

[52] Merklin Dep. at 38:24–39:9.

[53] Morrissey Expert Report at 12.

[54] *See* Northrop Grumman's S.J. Mem. at 11-13.

[55] Merklin Dep. at 160:7–13, 163:6–19, Morrissey Expert Report at 10.

14

the Town's decision to house the PTAS in a building was not only more expensive, but was also not based on any health or regulatory reasoning .[56] Because Mr. Merklin could not provide an explanation for why such additional expenses were "necessary," this Court should exclude his opinion as to these costs to the extent the Town relies on Mr. Merklin's opinions relating to the aesthetic and other additions to the PTAS to support the claims that its costs were "necessary" under CERCLA. *See Donnelly*, 80 F. Supp. 2d at 49–50, *Dora Homes, Inc.*, 344 F. Supp. 2d at 888.

CERCLA, in any event, does not impose liability for aesthetics. *See United States v. Georgia-Pac., LLC*, No. CIV.A. 1-09-CV-429, 2009 WL 3413594, at *92 (W.D. Mich. Sept. 30, 2009) ("CERCLA and the NCP do not give U.S. EPA the legal authority to select cleanup remedies based on . . . aesthetics."); *Milbut v. Hi-Score Plant Food Co.*, No. CIV. A. 91-2008, 1992 WL 396774, at *8 n.5 (E.D. Pa. Dec. 24, 1992) ("We find no support for any theory basing CERCLA liability on aesthetics: the concern of CERCLA is to correct a hazardous situation, not an aesthetic blight."). Whatever opinion Mr. Merklin has on aesthetics is thus irrelevant to any issue that "logically advances a material aspect of the [Town's] case." *Pozefsky*, 2001 WL 967608, at *2 (quotations omitted).

IV. <u>CONCLUSION</u>

For all of the foregoing reasons, the Court should exclude all of Mr. Merklin's expert opinions pursuant to Federal Rules of Evidence 401, 403, 702, and 703, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

---

[56] Merklin Dep. at 159:17–160:20; Morrissey Expert Report at 11.

Dated: March 8, 2021                                             Respectfully submitted,

/s Mark A. Miller

Mark A. Chertok                                                  Stephen A. Klein (*pro hac vice*)
Elizabeth Knauer                                                 Mark A. Miller (*pro hac vice*)
SIVE, PAGET & RIESEL, P.C.                                       HOLLINGSWORTH LLP
460 Park Avenue                                                  1350 I Street, N.W.
New York, NY  10022                                              Washington, DC  20005
Telephone: (212) 421-2150                                        Telephone: (202) 898-5800
Facsimile:  (212) 421-1891                                       Facsimile:  (202) 682-1639
Email: mchertok@sprlaw.com                                       Email:  sklein@hollingsworthllp.com
       eknauer@sprlaw.com                                                mmiller@hollingsworthllp.com

*Attorneys for Defendants*
*Northrop Grumman Corporation and Northrop Grumman Systems Corporation*

16