UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

X--------------------------------------------------------
TOWN OF HEMPSTEAD,                    Civil Action No. 2:16-cv-03652-ENV-ST

       Plaintiff,

-against-

UNITED STATES OF AMERICA, *et al.*,

       Defendants.
X--------------------------------------------------------


REPLY IN SUPPORT OF NORTHROP GRUMMAN CORPORATION AND NORTHROP GRUMMAN SYSTEMS CORPORATION'S DAUBERT MOTION TO EXCLUDE EXPERT TESTIMONY OF WILLIAM MERKLIN

| | |
|---|---|
| Mark A. Chertok | Stephen A. Klein (*pro hac vice*) |
| Elizabeth Knauer | Mark A. Miller (*pro hac vice*) |
| SIVE, PAGET & RIESEL, P.C. | HOLLINGSWORTH LLP |
| 460 Park Avenue | 1350 I Street, N.W. |
| New York, New York 10022 | Washington, D.C. 20005 |
| Telephone: (212) 421-2150 | Telephone: (202) 898-5800 |
| Facsimile: (212) 421-1891 | Facsimile: (202) 682-1639 |
| Email: mchertok@sprlaw.com | Email: sklein@hollingsworthllp.com |
|     eknauer@sprlaw.com |     mmiller@hollingsworthllp.com |

*Attorneys for Defendants*
*Northrop Grumman Corporation and Northrop Grumman Systems Corporation*

```
```

## **TABLE OF CONTENTS**

**Page**

I. THE COURT SHOULD DISREGARD MR. MERKLIN'S NEWLY SUBMITTED DECLARATION UNDER THE SHAM AFFIDAVIT RULE....................2

II. THE TOWN CONCEDES THAT MR. MERKLIN IS NOT OPINING ON THE SOURCE OF FREON-113 IN THE TOWN'S WELLS FOR PURPOSES OF ITS CERCLA § 107(A) CLAIM ..............................................................................5

III. MR. MERKLIN'S OWN ADMISSIONS WARRANT THE EXCLUSION OF ANY TESTIMONY ABOUT PURPORTED NCP COMPLIANCE................................9

IV. MR. MERKLIN'S *IPSE DIXIT* IN SUPPORT OF HIS OWN DESIGN PARAMETERS IS UNRELIABLE ................................................................................11

V. MR. MERKLIN'S AESTHETICS TESTIMONY LACKS "FIT" TO THE TOWN'S CERCLA CLAIMS ...............................................................................14

VI. CONCLUSION..........................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Borawick v. Shay*,
    68 F.3d 597 (2d Cir. 1995) ................................................................................................. 2

*Brown v. Henderson*,
    257 F.3d 246 (2d Cir. 2001) ................................................................................................. 5

*Cedar Petrochemicals, Inc. v. Donbu Hannong Chem. Co. Ltd.*,
    769 F. Supp. 2d 269 (S.D.N.Y. 2011) ................................................................................. 8

*Crescent Beach Club LLC v. Indian Harbor Ins. Co.*,
    468 F. Supp. 3d 515 (E.D.N.Y. 2020) ............................................................................ 3, 5

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ................................................................................................... passim

*Donnelly v. Ford Motor Co.*,
    80 F. Supp. 2d 45 (E.D.N.Y. 1999) ....................................................................... 11, 12, 13

*DVL, Inc. v. Gen. Elec. Co.*,
    811 F. Supp. 2d 579 (N.D.N.Y. 2010) ................................................................................. 9

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136, 146 (1997) ................................................................................................... 13

*Hayes v. N.Y. City Dep't of Corr.*,
    84 F.3d 614 (2d Cir. 1996) ................................................................................................. 3

*In Re M/V MSC Flamina*,
    No. 12-CV-8892, 2017 WL 3208598 (S.D.N.Y. Jul. 28, 2007) ...................................... 10

*Mack v. United States*,
    814 F.2d 120 (2d Cir. 1987) ............................................................................................ 2, 8

*Milbut v. Hi-Score Plant Food Co.*,
    No. 91-2008, 1992 WL 396774 (E.D. Pa. Dec. 24, 1992) ................................................ 14

*In re Mirena IUS Levonorgestrel-Related Prod. Liab. Litig. (No. II)*,
    982 F.3d 113 (2d Cir. 2020) ................................................................................................. 1

*MPM Silicones, LLC v. Union Carbide Corp.*,
    No. 111CV1542BKSATB, 2016 WL 11604974 (N.D.N.Y. July 7, 2016) ...................... 10

*In re Namenda Direct Purchaser Antitrust Litig.*,
  331 F. Supp. 3d 152 (S.D.N.Y.2018)..................................................................................12

*New York v. Next Millenium Realty, LLC*,
  732 F.3d 117 (2d Cir. 2013).................................................................................................2

*Patterson v. Balsamico*,
  440 F.3d 104 (2d Cir. 2006).................................................................................................5

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
  691 F. Supp. 2d 448 (S.D.N.Y. 2010)..................................................................................6

*Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*,
  No. 11-CV-726 CBA, 2013 WL 4409434 (E.D.N.Y. Aug. 2, 2013) .....................................5

*Pozefsky v. Baxter Healthcare Corp.*,
  No. 92CV0314LEKRWS, 2001 WL 967608 (N.D.N.Y. Aug. 16, 2001) ..............................14

*In re Rezulin Prod. Liab. Litig.*,
  309 F. Supp. 2d 531 (S.D.N.Y. 2004)........................................................................6, 9, 10

*Snodgrass v. Ford Motor Co.*,
  No. CV 96-1814(JBS), 2001 WL 37118915 (D.N.J. Aug. 31, 2001) .....................................7

*Town of Halfmoon v. GE*,
  No. 1:09-CV-228, 2016 U.S. Dist. LEXIS 26888 (N.D.N.Y. Mar. 3, 2016) ................10, 11

*Town of Oyster Bay v. Northrop Grumman Sys. Corp.*,
  No. 05-CV-1945 (TCP), 2009 WL 10691086 (E.D.N.Y. May 14, 2009), *as
  amended on reconsideration*, 2010 WL 11623604 (E.D.N.Y. May 21, 2010) ........................9

*United States v. Georgia-Pac., LLC*,
  No. 1-09-CV-429, 2009 WL 3413594 (W.D. Mich. Sept. 30, 2009) ....................................14

*Young v. United States*,
  394 F.3d 858 (10th Cir. 2005) ......................................................................................13, 14

**Statutes**

Comprehensive Environmental Response, Compensation, and Liability Act of
  1980 (CERCLA), 42 U.S.C. § 9607(a)............................................................................1, 10

Comprehensive Environmental Response, Compensation, and Liability Act of
  1980 (CERCLA), § 107(a), 42 U.S.C. § 9607(a) ........................................................ *passim*

**Other Authorities**

Federal Rule of Evidence 401 ....................................................................................................15

Federal Rule of Evidence 403 ...........................................................................................................15

Federal Rule of Evidence 702 ...............................................................................................1, 14, 15

Federal Rule of Evidence 703 ...........................................................................................................15

Federal Rules of Civil Procedure 37(c)(1) .........................................................................................5

Plaintiff, the Town of Hempstead (the "Town"), offers the purported expert testimony of William Merklin to self-validate the work he did in designing and building the treatment systems on Levittown Water District ("LWD") Wells 7A, 8A, and 13, stating that his education, training, and experience renders his testimony reliable and admissible.  But Mr. Merklin's opinions, based on his own say-so, have no import to the two key inquiries relevant to the Town's claim under § 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9607(a): (1) whether there was a release of a hazardous substance that "cause[ed] the incurrence of response costs" (*i.e.*, that Northrop Grumman is the source of hazardous substances in the LWD Wells); and (2) whether the Town's costs were "necessary" and incurred "consistent with the national contingency plan" ("NCP").[1]  As demonstrated in Northrop Grumman's Motion to Exclude Expert Testimony of William Merklin ("Merklin Mot."), Mr. Merklin's opinions are not based on a reliable methodology and do not "fit" the issues in the case and thus do not assist the trier of fact; consequently, they fail the admissibility standards of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

In opposition, the Town rehashes much of the speculative, unreliable, and irrelevant information and conclusions contained in Mr. Merklin's expert report without explaining how his testimony satisfies *Daubert*'s strictures.[2]  The Town has admitted that Mr. Merklin is not

---

[1] 42 U.S.C. § 9607(a); *see also* Mem. in Supp. of Northrop Grumman's Mot. for Summ. J. ("NG MSJ") at 15–16 (citing cases).

[2] The Town urges the Court to take a hands-off approach to expert testimony, and argues that there should be a presumption of admissibility and the rejection of expert testimony is the exception rather than the rule.  Pl.'s Mem. of Law in Opp'n to Defs.' Daubert Mots. to Exclude Testimony of Pl.'s Expert Witnesses at 3 ("Opp'n").  That is not, however, what Rule 702 and *Daubert* mandate.  *See In re Mirena IUS Levonorgestrel-Related Prod. Liab. Litig. (No. II)*, 982 F.3d 113, 123 (2d Cir. 2020) (reaffirming the gatekeeping role of district courts in only allowing expert testimony that "'both rests on a reliable foundation and is relevant to the task at hand'" (quoting *Daubert*, 509 U.S. at 597)).  Even the case cited

1

offering an expert opinion on the source of the Freon-113 in the LWD Wells, nor does the Town contend he is even qualified to offer a source opinion, so his opinions on "source" are irrelevant and inadmissible. His testimony fails also to "fit" the inquiry into whether the Town's treatment system costs were "necessary" under CERCLA or incurred consistent with the NCP. *Daubert*, 509 U.S. at 591–92. Rather than addressing his own deposition admissions that he did nothing to comply with the NCP, Mr. Merklin discusses vague industry standards that have nothing to do with the NCP. Finally, Mr. Merklin's opinions about his own work in designing and implementing the treatment systems on LWD Wells 7A, 8A, and 13, as well as their aesthetic value, are irrelevant under CERCLA and are thus excludable under *Daubert*.[3]

I. THE COURT SHOULD DISREGARD MR. MERKLIN'S NEWLY SUBMITTED DECLARATION UNDER THE SHAM AFFIDAVIT RULE.

The Town supports its Opposition with a newly-filed declaration from Mr. Merklin. The Town states that courts may consider an expert declaration providing evidentiary details for an opinion expressed in an expert report in opposition to summary judgment and *Daubert* motions. Opp'n at 3. While that may be generally true, Mr. Merklin's declaration must be disregarded under the "Sham Affidavit" rule. "It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987) (citations omitted); *see also*

---

by the Town for its lax view of *Daubert*, Opp'n at 4, acknowledges the gatekeeping role assigned to trial judges for the admissibility of scientific evidence. *Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir. 1995) ("In giving trial judges 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand,' the Court assigned trial judges 'a gate-keeping role' for the admissibility of scientific evidence.").

[3] The Town cites *New York v. Next Millenium Realty, LLC*, 732 F.3d 117, 122 (2d Cir. 2013), to support Mr. Merklin's supposed expertise in designing packed tower aeration treatment systems ("PTAS"). Opp'n at 7. This case addresses neither Mr. Merklin's *Daubert* qualifications nor the efficacy, cost effectiveness, or appropriateness of his design.

2

*Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) (the Sham Affidavit rule is a principle that "a party may not create an issue of fact by submitting an affidavit in opposition to summary judgment motion, that, by omission or addition, contradicts the affiant's previous deposition testimony"). Courts recognize the mischief that would arise were witnesses allowed to undo their admissions in sworn testimony after the fact through a subsequent self-serving affidavit saying the opposite. *See, e.g., Crescent Beach Club LLC v. Indian Harbor Ins. Co.*, 468 F. Supp. 3d 515, 547 (E.D.N.Y. 2020) (explaining that "the utility of summary judgment as a procedure for screening out sham issues of fact would be greatly diminish[ed] if a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, . . . factual issues that a party creates by filing an affidavit crafted to oppose a summary judgment motion that contradicts that party's prior testimony are not genuine issues for trial" (quotations omitted)).

Mr. Merklin's newly-submitted declaration contains numerous attempts to contradict his prior testimony. These contradictions are identified in the chart attached as Appendix A to Northrop Grumman's Reply in Support of its Motion for Summary Judgment ("Reply App. A"), which is being filed concurrently with this Reply. To mention but a few examples: Mr. Merklin admitted in deposition that he is not opining on whether the source of the Freon-113 in the LWD Wells came from the Northrop Grumman Site.[4] Mr. Merklin's new declaration contains more than 21 paragraphs purportedly concluding that the substances in the LWD Wells originated from the Northrop Grumman Site.[5] Reply App. A. Mr. Merklin also admitted in deposition that he conducted a two-mile radius search to investigate the source of contamination in the LWD

---

[4] Northrop Grumman's Statement of Material Facts in Supp. of Mot. for Summ. J. ("SMF") ¶ 110, Merklin Dep. at 135:16–136:7.

[5] June 17, 2021 Declaration of William D. Merklin, P.E. ("Merklin Decl.") ¶¶ 10, 12–31.

3

Wells, which did not yield any known sources of hazardous substances, so he simply assumed that the source was the Site,[6] and that he did not consider any information on other potential sources.[7]  Now, Mr. Merklin indicates that he in fact considered other, previously undisclosed information allegedly supporting an opinion that Northrop Grumman is the source of Freon-113 in the LWD Wells.[8]  Reply App. A.

Mr. Merklin also previously testified that he could not identify what OU2 monitoring well data he used for his 420 ug/l of TCE design criterion,[9] and that he did not perform any analysis to determine any potential future levels of hazardous substances that would impact the LWD Wells.[10]  Mr. Merklin's new declaration claims that he reviewed an extensive range of groundwater monitoring reports and data which helped him estimate the maximum influent concentrations for the LWD Wells.[11]  Reply App. A.  Mr. Merklin further admitted in deposition that he conducted only a "very cursory" analysis of alternative treatment systems for the LWD Wells, consisting of just packed tower aeration treatment ("PTAS") and granular activated carbon ("GAC") systems.[12]  Mr. Merklin now states in his new declaration that he evaluated "other alternatives," including the drilling of a new well elsewhere in the LWD.[13]  Reply App. A.

Mr. Merklin's new declaration (and those of Mr. Reinhardt, Mr. Humann, and Dr. Hazlett) is thus an attempt to contradict his prior, sworn testimony.  The Court should disregard

---

[6] SMF ¶ 63; Merklin Dep. at 153:15–154:2.

[7] SMF ¶ 65; Merklin Dep. at 153:15–154:2.

[8] Merklin Decl. ¶ 18 (discussing the New York State Source Water Assessment Plan ("SWAP")).

[9] SMF ¶ 103; Merklin Dep. at 135:8–138:18.

[10] SMF ¶ 66; Merklin Dep. at 65:11–21.

[11] Merklin Decl. ¶¶ 21–23, 38.

[12] SMF ¶¶ 101, 134, 136; Merklin Dep. at 59:5–15, 141:4–23, 192:5–8.

[13] Merklin Decl. ¶¶ 41–43.

4

the declaration for purposes of Northrop Grumman's Summary Judgment and *Daubert* motions under the Sham Affidavit rule. *E.g.*, *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("Factual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony."); *Crescent Beach Club LLC*, 468 F. Supp. 3d at 547 (factual issues created by a party by filing an affidavit that contradicts that party's prior testimony are not genuine issues for trial, and to the extent such affidavits conflict with prior testimony, such affidavits can be disregarded).

Additionally, the new expert opinions disclosed for the first time in Mr. Merklin's declaration are not timely under the rules or this Court's scheduling orders and thus should not be considered. *See, e.g.*, *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (listing factors for excluding newly disclosed expert opinion under Fed. R. Civ. P. 37(c)(1)). Phase 1 discovery is closed, and the Town has offered no explanation for the failure to comply with the disclosure requirement other than stating it is not for "liability purposes," Opp'n at 10, which shows that the opinion is not important to the issues in this case and should be excluded. *See Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, No. 11-CV-726 CBA, 2013 WL 4409434, at *16 (E.D.N.Y. Aug. 2, 2013) (preclusion is justified where, *inter alia*, the plaintiff offers no explanation for their failure to disclose expert opinion and discovery is closed).

II. THE TOWN CONCEDES THAT MR. MERKLIN IS NOT OPINING ON THE SOURCE OF FREON-113 IN THE TOWN'S WELLS FOR PURPOSES OF ITS CERCLA § 107(A) CLAIM.

The Town concedes that Mr. Merklin is not offering an expert opinion on the source of the Freon-113 in the LWD Wells 7A, 8A, and 13 "for liability purposes" (*i.e.*, whether there was a release of Freon-113 by Northrop Grumman that caused the Town to incur response costs as

required by CERCLA § 107(a)),[14] nor does the Town contend that Mr. Merklin is even qualified to testify about source identification.[15] When asked about his area of expertise, Mr. Merklin stated that he considers himself an expert in regulatory compliance as it relates to "water supply" based on his experience submitting and receiving approvals from the NYSDOH.[16] Mr. Merklin did not state either in his declaration or in deposition testimony that he is an expert in determining the source of substances traveling via groundwater, or fate and transport issues of such substances. He further admitted that he is not an expert in either hydrology or chemistry.[17]

These admissions should end the inquiry into whether Mr. Merklin's "source" testimony could assist the factfinder and thus are admissible under *Daubert*. *See, e.g.*, *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 559 (S.D.N.Y. 2004) (although a lack of formal training does not necessarily disqualify an expert from testifying, an "admitted lack of pertinent expertise" will); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 691 F. Supp. 2d 448, 468 (S.D.N.Y. 2010) (excluding expert testimony, although the expert claimed he had sufficient expertise to testify about a certain topic, because he and the plaintiffs agreed he had not been retained to opine regarding that topic, and the testimony was considered outside his area of established expertise and beyond the proper scope of his testimony).

Despite its admissions, the Town attempts to "backdoor" Mr. Merklin's opinion that Northrop Grumman was the source of Freon-113 in the LWD Wells, arguing that such an

---

[14] Opp'n at 10; *see also* SMF ¶ 110, Merklin Dep. at 129:13–20 ("Q: You're not giving testimony as to the specific source of contaminants at the Levittown Water District wells as to whether they come from the Northrup Grumman property and/or the Navy, adjoining Navy property and/or any other property; correct? A: No.").

[15] Opp'n at 8 (claiming that Mr. Merklin is an expert on the design and construction of treatment systems, but failing to list that he has a purported expertise in source identification).

[16] Merklin Dep. at 37:3–16.

[17] *See, e.g.*, Merklin Dep. at 37:3–39:9.

6

opinion was used to select the design parameters for the treatment systems Mr. Merklin built on the Town's behalf.[18] As explained in the Merklin Motion, Mr. Merklin's statements about the source of Freon-113 in LWD Wells 7A, 8A, and 13 are, by his own admission, mere assumptions based upon the proximity of those wells to the OU2 plume unsupported by any analysis.[19] The Opposition does nothing to counter the inadmissibility of Mr. Merklin's "source" opinions.

For example, the Town cites Mr. Merklin's "two-mile radius search" to justify Mr. Merklin's statement that he considers Northrop Grumman to be the source of Freon-113 in the LWD Wells.[20] That search revealed nothing, and Mr. Merklin then just assumed the Site was the source, because it was "2.5 miles north-northeast from Wells 7A, 8A, and 13" and because there were detections of Freon-113 in the OU2 plume.[21] In fact, the current version of the report Mr. Merklin used for his radius search lists numerous other potential upgradient sources within a five-mile radius of the LWD Wells, including over 100 federal National Priority List and RCRA Sites and New York State Hazardous Waste Sites.[22] By looking solely at data concerning the Northrop Grumman Site, Mr. Merklin's determination of the source of hazardous substances in the LWD Wells is a "self-fulfilling prophecy: his investigations entail looking for clues that only he has identified as being important." *Snodgrass v. Ford Motor Co.*, No. CV 96-1814(JBS), 2001 WL 37118915, at *16 (D.N.J. Aug. 31, 2001) ("The Court agrees that Defendants have raised sufficient doubt about the methodology of [the plaintiffs' expert's] investigations that it

---

[18] Opp'n at 10–15.

[19] Merklin Mot. at 8–9.

[20] SMF ¶ 64; Merklin Dep. at 63:18–64:2, 129:24–130:5.

[21] D&B Engineers and Architects, P.C. Expert Report at 4.

[22] *See* Northrop Grumman's Resp. to Pl.'s. Rule 56.1 Statement of Additional Material Facts ("NG SMF Response") ¶ 30.

would be premature to grant summary judgment in plaintiffs' favor as to causation.").

The Town cites *Cedar Petrochemicals, Inc. v. Donbu Hannong Chem. Co. Ltd.*, 769 F. Supp. 2d 269, at 284 (S.D.N.Y. 2011), to argue that Mr. Merklin's failure to consider other available data is justified. The plaintiffs' experts in *Cedar Petrochemicals* relied upon all of the available data to form their opinions, and the defendants argued that the underlying amount of data available to the experts was insufficient to support their conclusions. *Id*. at 284–85. The court admitted that plaintiffs' experts' assertions were tied directly to the limited evidence they had available to them, and the experts were not required to consider circumstances that were not and could not be known by the experts. *Id.* at 284. Here, by contrast, Northrop Grumman challenges Mr. Merklin's choice to disregard evidence that was available to him. He admitted that he did not identify any data to the west of the LWD Wells, did not conduct his own modeling, and did not research any other potential sources.[23] Mr. Merklin based his entire

---

[23] SMF ¶¶ 63, 65, 66; Merklin Dep. at 62:23–65:21. Mr. Merklin now implies that he also considered Source Water Assessment Plan ("SWAP") reports prepared by NYSDOH for the LWD Wells. Opp'n at 11. Such an opinion was not provided in Mr. Merklin's expert report or raised at his deposition, and the SWAPs were not identified as a material he considered in his expert report (or in the design reports Mr. Merklin prepared for the treatment systems on LWD Wells 7A, 8A, and 13). Indeed, Mr. Merklin admitted at deposition that, other than the radius search, he conducted no additional research relating to the source of Freon-113 in the LWD Wells when preparing his expert report, relying solely upon his design reports and other exhibits to his Expert Report. Merklin Mot. at 5; Merklin Dep. at 25:23–29:6, 131:17–132:20. Of these documents, Mr. Merklin admitted that the "data available at the time of the report preparation" which supported his conclusion that the Site was the source of the contamination at the LWD Wells is summarized in his design reports. Merklin Report at 3; SMF ¶¶ 58, 99, Merklin Dep. at 131:17–132:20. The SWAPs are not referenced in those reports, and Mr. Merklin cannot make new, contradictory statements in his declaration attempting to distance himself from his deposition admission. *See, e.g.*, *Mack*, 814 F.2d at 124. In any event, the SWAPs fail to support Mr. Merklin's contention that the Northrop Grumman Site is the source of Freon-113 in the LWD Wells. The SWAP modeling and maps, developed in the early 2000s, are outdated and did not take into account the substantial pumping of the OU2 On-site containment ("ONCT") system at 3,800 gpm (5.5MGD), which would tend to push the capture zones of the LWD wells to the west away from the OU2 plume. More recent, accurate models reflect the groundwater flow in the relevant area to the south-southeast, indicating that the Northrop Grumman Site is not hydraulically upgradient of the LWD Wells. NG SMF Response ¶¶ 40–41; Northrop Grumman's Reply Mem. of Law in Supp. of Mot. for Summ. J. at 9–10; Declaration of Nathan Epler in Supp. of Northrop Grumman's *Daubert* & Summ. J. Replies ¶¶ 4–16, Decl. of Mark A. Miller in Supp. of Northrop Grumman's *Daubert* & Summ. J. Replies, Ex. 40.

source opinion on the mere presence of Freon-113 in both the LWD Wells and at some locations in the OU2 plume (which he never analyzed to determine whether such locations were hydraulically upgradient from, and could impact, the LWD Wells).[24] *See* Merklin Mot. at 8. Spatial proximity alone is an insufficient basis on which to base expert opinion that a defendant's site is the source of hazardous substance impacting the plaintiff's site, particularly where the migration pathway is dependent on hydrogeology that contradicts the assumption. *See DVL, Inc. v. Gen. Elec. Co.*, 811 F. Supp. 2d 579, 597–98 (N.D.N.Y. 2010) (an expert's circumstantial evidence of spatial proximity was insufficient to prove a nexus between the defendant's waste and the contamination at the plaintiff's site).

### III. MR. MERKLIN'S OWN ADMISSIONS WARRANT THE EXCLUSION OF ANY TESTIMONY ABOUT PURPORTED NCP COMPLIANCE.

At his deposition, Mr. Merklin admitted that he is "not familiar with" the NCP[25] and did not make "any effort to comply" with the NCP in designing and building the treatment systems for LWD Wells 7A, 8A, and 13.[26] These admissions render Mr. Merklin's NCP opinions inadmissible under *Daubert*, and the Town cannot prevail without them on its CERCLA § 107(a) claim.[27] *See, e.g.*, *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d at 559 (excluding testimony of the plaintiff's expert due to the expert's "admitted lack of pertinent expertise").

---

[24] SMF ¶¶ 57–58, 63, 65, 66; Merklin Dep. at 128:11–129:23, 147:10–149:18.

[25] SMF ¶ 128; Merklin Dep. at 109:16–110:2.

[26] SMF ¶ 131; Merklin Dep. at 109:16–110:2.

[27] *See, e.g.*, *Town of Oyster Bay v. Northrop Grumman Sys. Corp.*, No. 05-CV-1945 (TCP), 2009 WL 10691086, at *21–22 (E.D.N.Y. May 14, 2009), *as amended on reconsideration*, 2010 WL 11623604 (E.D.N.Y. May 21, 2010) (granting summary judgment on § 107 claim because, *inter alia*, the plaintiff failed to satisfy NCP requirements for cost-effectiveness, evaluation of alternative remedies and public participation, or prove that the costs were necessary under CERCLA).

The Town instead argues that Mr. Merklin should be allowed to offer testimony that the Town's costs were consistent with the NCP due to "compliance with applicable regulations and requirements governing LWD as a public water district." Opp'n at 18–19 (citing *Town of Halfmoon v. GE*, No. 1:09-CV-228, 2016 U.S. Dist. LEXIS 26888, at **17–18 (N.D.N.Y. Mar. 3, 2016)). Mr. Merklin's testimony about general regulations applicable to water providers is irrelevant because the Town cannot recover its costs under CERCLA unless they were "incurred . . . consistent with the national contingency plan," and not some other set of regulations. 42 U.S.C. § 9607(a). Further, whatever expertise Mr. Merklin may have in these separate and undefined regulations and requirements does not grant him the expertise to opine on NCP compliance, an area with which he admitted having no familiarity. *See In Re M/V MSC Flamina*, No. 12-CV-8892, 2017 WL 3208598, at *4 (S.D.N.Y. Jul. 28, 2007) (an individual in one field may not offer opinions in another: the expertise and area of proffered opinions should be closely related); *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d at 559 (excluding testimony of the plaintiff's expert due to the expert's "admitted lack of pertinent expertise").[28]

*Town of Halfmoon* underscores why Mr. Merklin's testimony on NCP compliance lacks "fit" under *Daubert*. There the plaintiff's expert sought to opine on how EPA's oversight and approval of the remedy selection process corresponded and complied with various provisions of the NCP. *Id.* at **17–18. The court found this analysis to be relevant, noting that one way of demonstrating NCP compliance is to show that the state or federal environmental agency monitored and ultimately approved the party's response. *Id.* Here, NYSDEC, the lead

---

[28] *Cf. also MPM Silicones, LLC v. Union Carbide Corp.*, No. 111CV1542BKSATB, 2016 WL 11604974, at *4 (N.D.N.Y. July 7, 2016) (expert qualified to opine on the NCP had 30 years of experience conducting NCP-compliant remedial and removal actions).

10

environmental agency in the State of New York, never approved the treatment systems on the LWD Wells, much less monitored the Town's work to ensure NCP compliance.[29]

The *Town of Halfmoon* defendants did not challenge the relevancy of the expert's opinions, instead faulting the expert for his failure to link one particular remedy, the provision of alternative drinking water, to its analogous NCP provision, as well as for framing his opinions as certain aspects of the remedy being "not inconsistent with" rather than "consistent with the NCP." 2016 U.S. Dist. LEXIS 26888, at **17–18, 43. The expert's inability to pass an "impromptu closed book examination" and "trite semantic distinction" is a far cry from Mr. Merklin's admitted total ignorance of the NCP and from his admission that he took no steps to comply with it in designing and constructing the treatment systems on LWD Wells 7A, 8A, and 13. These concessions make Mr. Merklin unqualified to opine on NCP consistency, and any such testimony should is based on an unsound and unreliable and methodology.

IV. MR. MERKLIN'S *IPSE DIXIT* IN SUPPORT OF HIS OWN DESIGN PARAMETERS IS UNRELIABLE.

As shown in the Merklin Motion, Mr. Merklin's opinion regarding the design parameters he utilized in designing the treatment systems for the LWD Wells is both derived from an unreliable methodology and lacks "fit," *i.e.*, is irrelevant to the Town's burden of proving its costs were "necessary" under CERCLA §107(a). Among other things, Mr. Merklin could not identify the data he utilized in forming his opinions or a cognizable methodology he used to form his opinion. Merklin Mot. at 11–14; *see also Donnelly v. Ford Motor Co.*, 80 F. Supp. 2d 45, 49–50 (E.D.N.Y. 1999) (expert testimony is inadmissible if the expert does not "identify any specific technique or method that [they] used, and cites no industry standards, surveys or studies

---

[29] SMF ¶ 147.

11

upon which [they] relied," because reliability requires "a detailed explication of the reasoning that has led to [the expert's] conclusion").

In response, the Town argues that Mr. Merklin's opinions are based on his education, training, and experience, which make Mr. Merklin qualified to testify "as to why he chose the design criteria, why that design criteria was appropriate in this case, the process and costs incurred in constructing the PTAS treatment systems, and the approvals for those systems obtained by the applicable regulatory agencies." Opp'n at 19–24. The Town also argues that this opinion is based on sufficient data, without explaining the data, and is reliable and admissible based on this same reasoning. Opp'n at 24.

The Town does not contest that Mr. Merklin bases his opinion that his work in designing the treatment systems on the LWD Wells was "typical" and "reasonable" solely on his own prior experience (*i.e.*, his own say-so). Opp'n at 19–24; Merklin Mot. at 11–15. It argues instead that Mr. Merklin's inability to identify a cognizable methodology in forming his opinions goes to the weight, not the admissibility, of his testimony. Opp'n at 19. The Town is wrong. The Court's gatekeeping role prevents it from admitting evidence that is not supported by sufficient facts and data, that is based on an unreliable methodology, or that is irrelevant. *See, e.g.*, *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 168–69 (S.D.N.Y.2018); *see also Donnelly*, 80 F. Supp. 2d at 49–50 (expert testimony is inadmissible if the expert does not "identify any specific technique or method that [they] used, and cites no industry standards, surveys or studies upon which [they] relied").

Mr. Merklin chose the 420 μg/l of TCE design criteria based on his assumption that the OU2 plume was impacting the LWD Wells. This "source" opinion is flawed, because he admits he simply "assumed" the source based solely on proximity of the OU2 plume without

12

considering other potential sources. Merklin Mot. at 12. The 420 μg/l design criteria was allegedly based on the highest detection of TCE in the OU2 plume, but Mr. Merklin could not identify the sample this value was based upon, did not analyze whether the LWD Wells would ever actually be impacted by 420 μg/l of TCE, and made no determination of whether a design criteria less than 420 μg/l of TCE would have been effective. Merklin. Mot. at 12. While experts are allowed to rely on their work, experience, and firsthand knowledge to help form their opinions, purported expert testimony that is connected to existing data only by the *ipse dixit* of the expert is inadmissible, as the Town concedes. Opp'n at 20; *see also Donnelly*, 80 F. Supp. 2d at 48 ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.") (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

      Even if Mr. Merklin's *ipse dixit* could be considered a reliable methodology, his testimony about design parameters is irrelevant to the Town's burden of proving its costs were necessary under CERCLA. Mr. Merklin claims that treatment systems should be "designed to continue to effectively treat the impacted water supply wells in the worst case scenario as concentration levels of the VOCs potentially change over the course of time."[30] But costs are "necessary" under CERCLA where they are "closely tied to the *actual cleanup* of hazardous releases." *Young v. United States*, 394 F.3d 858, 863 (10th Cir. 2005) (emphasis in original). Mr. Merklin's "worst case scenario" testimony does not "fit" the "pertinent inquir[ies]" in this lawsuit of whether the costs incurred by the Town were "necessary" to treat the low levels of hazardous substances in the LWD Wells, *Daubert*, 509 U.S. at 591–92, particularly where Mr.

---

[30] Merklin Decl. ¶ 36.

Merklin conducted no analysis to determine if the levels of Freon-113 in the LWD Wells would ever reach his hypothetical "worst case scenario."

V.   MR. MERKLIN'S AESTHETICS TESTIMONY LACKS "FIT" TO THE TOWN'S CERCLA CLAIMS.

Mr. Merklin admitted in deposition that the aesthetic elements of the treatment systems he designed for the LWD Wells have no impact on those systems' abilities to remove hazardous substance from the water they treat.[31] Costs to improve aesthetics thus are not "necessary" under CERCLA because they are not "closely tied to the *actual cleanup* of hazardous releases." *Young*, 394 F. 3d at 863 (emphasis added). Any opinion by Mr. Merklin concerning aesthetics is irrelevant to any issue that "logically advances a material aspect of the [Town's] case." *Pozefsky v. Baxter Healthcare Corp.*, No. 92CV0314LEKRWS, 2001 WL 967608, at *2 (N.D.N.Y. Aug. 16, 2001).

In response, the Town argues that Mr. Merklin's aesthetics opinion represents a factual dispute that should not be addressed on summary judgment. Opp'n at 23. Under *Daubert*, Mr. Merklin's testimony "must assist the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702, and it must "fit" the "pertinent inquir[ies]" in this lawsuit, *Daubert*, 509 U.S. at 591–92. Costs of aesthetics are not recoverable under CERCLA. *See United States v. Georgia-Pac., LLC*, No. 1-09-CV-429, 2009 WL 3413594, at *92 (W.D. Mich. Sept. 30, 2009) ("CERCLA and the NCP do not give U.S. EPA the legal authority to select cleanup remedies based on . . . aesthetics."); *Milbut v. Hi-Score Plant Food Co.*, No. 91-2008, 1992 WL 396774, at *5 n.5 (E.D. Pa. Dec. 24, 1992) ("We find no support for any theory basing CERCLA liability on aesthetics: the concern of CERCLA is to correct a hazardous situation, not

---

[31] SMF ¶¶ 116–121; Merklin Dep. at 160:14–20 ("Q: There's no health based reason or regulatory reason for the design of the building enclosure; correct? . . . A: That's correct.").

14

an aesthetic blight."). Because aesthetics are not recoverable under CERCLA, Mr. Merklin's testimony about the aesthetics of the treatment systems he designed for the Town are thus irrelevant to the "pertinent inquir[ies]" in this lawsuit, *Daubert*, 509 U.S. at 591–92, and should be excluded.

VI.   CONCLUSION

For the foregoing reasons, and for those explained in the Merklin Motion, the Court should exclude all of Mr. Merklin's expert opinions pursuant to Federal Rules of Evidence 401, 403, 702, and 703, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Dated: December 2, 2021

Mark A. Chertok
Elizabeth Knauer
SIVE, PAGET & RIESEL, P.C.
460 Park Avenue
New York, New York 10022
Telephone: (212) 421-2150
Facsimile: (212) 421-1891
Email:  mchertok@sprlaw.com
            eknauer@sprlaw.com

Respectfully submitted,

/s/ Mark A. Miller
Stephen A. Klein (*pro hac vice*)
Mark A. Miller (*pro hac vice*)
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, D.C. 20005
Telephone: (202) 898-5800
Facsimile: (202) 682-1639
Email:  sklein@hollingsworthllp.com
            mmiller@hollingsworthllp.com

*Attorneys for Defendants Northrop Grumman Corporation and Northrop Grumman Systems Corporation*

15