# EXHIBIT D



Deposition of:

# William Merklin

*December 13, 2019*

In the Matter of:

# Town of Hempstead v. United States of America et al.

Veritext Legal Solutions
800-734-5292 | calendar-dmv@veritext.com |

```
                                                          Page 1
 1
 2      UNITED STATES DISTRICT COURT
        EASTERN DISTRICT OF NEW YORK
 3      Index No. 2:16-cv-03652-ENV-ST
 4      ---------------------------------------x
 5      TOWN OF HEMPSTEAD,
 6                          Plaintiff,
 7
                   -against-
 8
        UNITED STATES OF AMERICA, DEPARTMENT
 9      OF THE NAVY, NORTHROP GRUMMAN
        CORPORATION, NORTHROP GRUMMAN SYSTEMS
10      CORPORATION, COVESTRO LLC, BAYER
        CORPORATION, OCCIDENTAL CHEMICAL
11      CORPORATION, THE KASPER (1977)
        IRREVOCABLE TRUST FOR THE BENEFIT OF
12      CHARLES B. KASPER AND RICHARD J.
        KASPER; SANDERINA R. KASPER, as Trustee
13      of the Kasper (1977) Irrevocable Trusts
        for the Benefit of Charles B. Kasper
14      and Richard J. Kasper; MARTIN STALLER,
        PARVIZ NEZAMI, JEROME COGAN, LAWRENCE
15      COHEN and AMERICAN DRIVE-IN CLEANERS OF
        BETHPAGE, INC.,
16
                            Defendants.
17
        ---------------------------------------x
18
19                          December 13, 2019
                            10:15 a.m.
20
21
22         DEPOSITION of WILLIAM D. MERKLIN, P.E.
23
24
25
```

Page 94

1              W.D. Merklin, P.E.
2     small assignments for the Commissioner,
3     but usually a project of this size would
4     be based on a specific proposal.
5          Q       Looking at the last sentence
6     of paragraph 2 on the first page of
7     Exhibit 3, your expert report, it says
8     "Since PTAS is a common treatment process
9     for the removal of the detected
10    contaminants, it was determined to be the
11    best choice for implementation in this
12    case;" correct?
13         A       Yes.
14         Q       And who made that
15    determination?
16         A       D&B.
17         Q       Was there a specific
18    document that set forth an analysis in
19    determining the best choice for
20    implementation?
21               MR. FISHER:  Objection.  You
22        can answer.
23         A       The basis of design reports.
24         Q       At the time -- well, strike
25    that.

Page 99

1               W.D. Merklin, P.E.
2      list or a federal list?
3           A     There is a state list and
4      there's also the health department
5      monitoring requirements list that I
6      talked about earlier, which is the list
7      that we generally use.
8           Q     And when you say again
9      health department, that's the Nassau
10     County Health Department; correct?
11          A     Nassau County, yes.
12          Q     Then the last sentence of
13     that paragraph talks about removal of a
14     well from service when the concentrations
15     is 80 percent or higher than the MCL.
16                Is that also based on the
17     industry -- unwritten industry standard
18     that you mentioned?
19          A     That's based on the Nassau
20     County monitoring requirements annual
21     letter where they recommend that a well
22     is removed at 80 percent.
23          Q     And it's not based on the
24     sanitary code; correct?
25          A     It's not on the State

1             W.D. Merklin, P.E.
2    removal prior to commencing with this
3    project and that means they didn't
4    require any treatment for VOCs; correct?
5        A      VOCs or anything else.
6        Q      Now, in the third paragraph
7    in that section it talks about the three
8    wells in increasing concentrations of 1,1
9    Dichloroethane or 1,1 DCA, Freon 113 and
10   PCE observed in the wells, but those were
11   not each observed in each of the wells;
12   correct?
13       A      That's right.
14       Q      And they did not all have
15   increasing trends over that period; did
16   they?
17       A      I don't know.
18       Q      And they -- for example, 1,1
19   DCA, you can look at the numbers, I think
20   it was basically between half a part per
21   billion and 2 part per billion.  Do you
22   consider that approaching the maximum
23   contaminant level of 5?
24       A      No.
25       Q      In the next paragraph for

Page 111

W.D. Merklin, P.E.

1
2  A     I don't know why.
3  Q     Well, let's go with your
4  Exhibit 5 then.  So there's a table that
5  has sampling results from the relative
6  wells on page 1; correct?
7  A     Yes.
8  Q     Do you know where those
9  results came from?
10 A     They would have been
11 provided by the Town.
12 Q     And it indicates that Freon
13 113 was found in well 13, but not in 7A
14 or 8A; correct?
15 A     Yes.
16 Q     And it doesn't indicate that
17 Trichloroethylene was found in any of the
18 wells; does it?
19 A     It does not.
20 Q     And, in fact, of the four
21 substances, only Freon 113 was found in
22 well 13 and the other three were only
23 found at well 7A and 8A; correct?
24 A     That's correct.
25 Q     Did you reach any conclusion

Page 129

1          W.D. Merklin, P.E.
2      A      I think it says specifically
3   originating from the Northrop Grumman
4   Systems Corporation site in Bethpage and
5   then there's an ID number.
6      Q      Do you know if that includes
7   the Navy NWIRP property?
8      A      I don't know.
9      Q      Do you know if the Hooker
10  RUCO property adjacent to the NWIRP
11  property contributes to the OU-2 plume?
12     A      I don't know.
13     Q      You're not giving testimony
14  as to the specific source of contaminants
15  at the Levittown Water District wells as
16  to whether they come from the Northrup
17  Grumman property and/or the Navy,
18  adjoining Navy property and/or any other
19  property; correct?
20     A      No.  I'm only -- I'm only I
21  guess stating that we looked at certain
22  data and used it to make a decision for
23  the decision criteria.
24     Q      You indicate on paragraph 3
25  that the Grumman site was known to exist